UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


MATTHEW TURNER,              )
                                 )
        Petitioner,          )
                                 )
    vs.                    )         No. 4:03CV00770 CEJ
                                 )
JAMES GAMMON,           )
                                 )
        Respondent.      )

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Matthew Turner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, habeas relief shall be denied, on the basis of the statute of limitations and, alternatively, on the merits.

Petitioner was convicted by a jury in the Circuit Court of St. Louis County, Missouri, of one count of attempted third-degree robbery, one count of first-degree robbery and one count of armed criminal action. He was sentenced as a persistent offender to concurrent terms of imprisonment of 25 years, 28 years and 28 years, respectively. The convictions and sentences were affirmed on direct appeal on December 14, 1999. Resp. Ex. E. Petitioner filed a motion for state post-conviction relief on June 9, 2000. Resp. Ex. F at 28. This motion was denied and the denial was affirmed on

appeal on May 7, 2002. Resp. Ex. I. The mandate of the appellate court issued on June 13, 2002.[1]

Petitioner signed his habeas petition on May 5, 2003, and the Court will deem it filed on that date. See Smith v. Roper, 2005 WL 2674942, at *2 n.1 (E.D. Mo. 2005) (absent evidence to the contrary, the date upon which a habeas petitioner signed the petition is sufficient indicia of the date upon which the petitioner delivered it to prison authorities for mailing, which date, under the prison mailbox rule, becomes the date of filing). Petitioner asserts that his constitutional rights were violated in the following ways:

(1)  The trial court improperly denied Petitioner's objection to the pretrial and in-court identification of Petitioner by Kevin Hoang, one of the victims;

(2)  The trial court improperly denied Petitioner's motion for judgment of acquittal on the armed criminal action charge because the evidence failed to establish that he used a dangerous instrument;

(3) The trial court improperly denied Petitioner's motion for judgment of acquittal on the first-degree robbery charge because the evidence failed to establish that he used or threatened to use a dangerous instrument;

(4)  Trial counsel rendered ineffective assistance in failing to call Petitioner's accomplice (Anthony Johnson) as a witness;

(5) Trial counsel rendered ineffective assistance in failing to object to improper statements by the prosecutor during closing argument; and

(6) Trial counsel rendered ineffective assistance in failing to call as a witness the first police officer to arrive at the scene of the crimes (Officer Kahmke).

_____

[1]  See www.courts.mo.gov/casenet/  Case No. ED79670

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Respondent argues that habeas relief should be denied because Petitioner procedurally defaulted claims (4) and (5) and the state courts' adjudication of Petitioner's first three claims was not unreasonable. Respondent does not address Petitioner's last claim.

## BACKGROUND

### Trial

In affirming Petitioner's convictions, the Missouri Court of Appeals summarized the evidence presented at trial as follows. Petitioner does not suggest that this summary is inaccurate, and the Court's own review of the record indicates that this is a fair portrayal of the evidence.

> On February 20, 1998 Song Hoang ("father") and his son, Kevin Hoang ("son"), drove from Indiana to St. Louis. When they arrived home, two men approached either side of the car and banged on the windows. One of the men yelled, "Open up or we'll shoot." The man on father's side of the car opened the car door, grabbed father by the shirt, punched him in the mouth, and tried to take his watch.

> Defendant opened the car door on son's side and held a Phillips screwdriver to his stomach. He took son's watch, a bracelet, and nine dollars in cash wrapped around a pack of cigarettes. As defendant took these items, he jabbed son three or four times with the screwdriver. Defendant and his accomplice left the scene in an older orange car.

> Son immediately contacted the police about the robbery. [Officer Kahmke arrived at the house and son gave a general description of the perpetrator with the screwdriver; father could not provide any description of this assailant]. A dispatch was issued for two black males driving an orange vehicle. One of the men was described as five-foot-nine, 140 pounds, with a moustache and goatee and wearing an almond-colored jacket. The other man [later identified as Petitioner] was described as five-foot-ten, 170 pounds, with short black hair.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Within minutes of the dispatch, a police officer spotted an orange car traveling in the area of the robbery. The officer stopped the car and observed the passenger leaning over as if to place something underneath the seat. When the driver could produce no identification, the officer asked the driver and passenger to exit the car. Underneath the seat, the officer found a man's watch. The passenger was identified as defendant. The police officer also seized a crushed pack of cigarettes bearing an Indiana tax stamp and a flat-head screwdriver from the car.

Within thirty minutes after the orange car was stopped, son arrived at the scene. Defendant and his accomplice had been handcuffed and placed in separate police vehicles. Son was only asked to identify defendant. Son told the officer he felt strongly about defendant, but he "couldn't be sure." One of the officers then asked him to estimate on a scale of one to ten how likely he felt it was that defendant was the perpetrator. Son ranked his identification as an eight. He also identified the watch seized from the car as his. The flat-head screwdriver had the same handle as the Phillips screwdriver used during the robbery. The latter was later found in the front seat of the Hoangs' car.

Resp. Ex. E at 2-3.

To the above, the Court adds that Kevin Hoang testified at trial that he got a good look at the face of the perpetrator who used the screwdriver, recalling that he looked like the actor Samuel Jackson. After Kevin Hoang testified about telling the police that he ranked the certitude of his identification of Petitioner as an eight to a nine, he identified Petitioner as his assailant, over defense counsel's objection. Resp. Ex. A at 218-19. During cross-examination, redirect, recross, and further redirect and recross, it was elicited that the description of Petitioner that Kevin Hoang initially gave Officer Kahmke was that his assailant was a black male, although Kevin Hoang thought he might have also mentioned the individual's height and weight. Id. at 242-271. During closing

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

argument, defense counsel pointed out that the description Kevin Hoang initially gave to the police did not include facial hair, whereas Petitioner's mug shots taken when Petitioner was arrested showed that he had a goatee. Id. at 377-78.

The Court also adds that Petitioner filed a pretrial motion to suppress Kevin Hoang's out-of-court identification of Petitioner and to preclude an in-court identification. Resp. Ex. B at 13-15. Petitioner argued that the one-on-one "showup," combined with the officer's request that Kevin Hoang rate his identification after Kevin Hoang said that he could not be sure of his identification of Petitioner, was impermissibly suggestive, and would taint any in-court identification of Petitioner by Kevin Hoang. Following a hearing, during which the facts as related in the above-quoted summary of the evidence were elicited, this motion was denied. Id. at 142-184.

**Direct Appeal**

On direct appeal, Petitioner raised the first three claims that he now raises for habeas relief, as set forth above. He argued that the use of the one-on-one showup, combined with the officer's request that Kevin Hoang estimate how likely it was that Petitioner was the perpetrator with the screwdriver, was impermissibly suggestive. Petitioner also pointed to factors which he argued called the reliability of the out-of-court and in-court identifications of Petitioner into question, including that Kevin Hoang's opportunity to view the perpetrator was "minimal"; the vague description of Petitioner that Kevin Hoang gave the officers before the showup; and Kevin Hoang's statement to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the police, before being "prompted" by them to rate his identification, that he could not be sure Petitioner was the perpetrator. Resp. Ex. C at 10-16.

Petitioner also argued that the evidence was insufficient to support his convictions for first-degree robbery and armed criminal action, because the evidence failed to show that the screwdriver was a dangerous instrument as it was used in this case. Id. at 17-24.

The Missouri Court of Appeals rejected all claims. The court noted that the test for admission of identification testimony was two-pronged: first, considering whether the identification procedure was impermissibly suggestive, and if so, considering what impact the suggestive procedure had upon the reliability of the witness's identification.[2] The court stated that Missouri courts routinely held that showups were not unduly suggestive, even when the suspect was handcuffed or sitting in a patrol car at the time of the identification, particularly when there was no encouragement or prompting by the police. The court stated that here there was no improper prompting or encouragement, and that the officer's request that Kevin Hoang estimate how likely it was that Petitioner was the perpetrator was "merely an attempt to have [Kevin Hoang] clarify his statement that he had a 'strong feeling' about Petitioner." Resp. Ex. E at 4. The court held that other factors as alleged by Petitioner, such as the supposedly minimal opportunity Kevin Hoang had to view Petitioner during the incident, and Kevin Hoang's omission of some of Petitioner's characteristics in his initial description to the police, went to the weight of the

_____

[2]     The court cited a Missouri Supreme Court case, which in turn cited Manson v. Brathwaite, 432 U.S. 98 (1977), for this test.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

identification, not its admissibility. The court then stated that having determined that the out-of-court identification procedure was not impermissibly suggestive, the court did not need to consider the reliability prong on the test. The court concluded that the trial court did not err in denying Petitioner's motion to suppress the in-court and out-of-court identifications. Id. at 4-5.

With respect to Petitioner's other two claims, the state appellate court held that under the circumstances of this case, Petitioner "was readily capable of causing serious physical injury to Kevin Hoang, jabbing him in the area of vital organs with a pointed screwdriver," and that thus, there was sufficient evidence to support Petitioner's convictions. Id. at 6.

**State Post-conviction Proceedings**

In an amended motion for post-conviction relief, filed under Missouri Supreme Court Rule 29.15 with the assistance of appointed counsel, Petitioner argued that trial counsel was ineffective for failing to subpoena and call Officer Kahmke to testify. Petitioner argued that Officer Kahmke would have testified that minutes after the incident, Kevin Hoang could only provide a "generic description of a black male" as the perpetrator with the screwdriver, and that this would have cast doubt on Kevin Hoang's out-of-court and in-court identifications of Petitioner. Petitioner asserted that a reasonably competent attorney would have called Officer Kahmke to testify and that had counsel done so, there was a reasonable probability that but for this error, the outcome of Petitioner's trial would have been different. Resp. Ex. F at 36-43.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

After the motion court denied Petitioner's request for an evidentiary hearing on this claim, Petitioner filed a pro se motion to amend the motion by adding a claim that his direct appeal counsel was ineffective for not presenting the unreliable-identification issue properly.  Id. at 50-51.

Without addressing the pro se "amendment," the motion denied post-conviction relief.  The court noted that under Missouri law, the failure to call impeachment witnesses did not warrant post-conviction relief because the facts to which they would testify, even if true, did not establish a defense.  The court found that Petitioner's allegation that Officer Kahmke's testimony would have cast doubt on Kevin Hoang's in-court identification was insufficient to show ineffectiveness of counsel as it would not have provided a viable defense, but would have only cast some doubt on the testimony of a State's witness.  Thus, the court concluded that Petitioner did not establish by a preponderance of the evidence that trial counsel's performance was deficient or that Petitioner suffered any prejudice therefrom.  Id. at 53-58.

The Missouri Court of Appeals affirmed the denial of post-conviction relief.  The court first noted that the selection of witnesses and the introduction of evidence were questions of trial strategy, which was "virtually unchallengeable," and that if a potential witness's testimony would not "unqualifiedly" support a defendant, the failure to call such a witness did not constitute ineffective assistance of counsel.  The appellate court then held that the proffered testimony of Officer Kahmke did not offer a defense, and further, that defense counsel's cross examination of Kevin Hoang brought out the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

impeaching evidence.  Accordingly, the appellate court concluded that the motion court did not err in finding that Petitioner was not denied the effective assistance of trial counsel.  Resp. Ex. I.

## DISCUSSION

### Statute of Limitations

Although Respondent did not raise a statute of limitations defense, this Court may consider <u>sua</u> <u>sponte</u> the timeliness of a habeas petition.  <u>See</u> <u>Day v. McDonough</u>, 126 S. Ct. 1675, 1684 (2006).   The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking federal habeas relief to file his petition within one year after his state conviction becomes final.  28 U.S.C. § 2244 (d)(1)(A).  In the Eighth Circuit, a conviction becomes final for these purposes at "the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition [for a writ of certiorari]."  <u>Curtiss v. Mount Pleasant Corr. Facility</u>, 338 F.3d 851, 853 (8th Cir. 2003).  Under United States Supreme Court Rule 13, a defendant has 90 days from the date of entry of judgment (as opposed to from the date the mandate issues) in a state court of last resort to file a petition for a writ of certiorari. Thus, the one year statute of limitations for filing a federal habeas claim in the present case began to run on March 14, 2000, 90 days after Petitioner's convictions were affirmed on direct appeal.

The AEDPA contains the following tolling provision:  "The time during which a properly filed application for State post-conviction or other collateral review with respect

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  Thus, Petitioner's one year period, which began to run on March 14, 2000, was tolled from June 9, 2000, until June 13, 2002, when the mandate of the appellate court was issued in the post-conviction proceedings.  See Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) (holding that an application for post-conviction review in Missouri is pending for purposes of § 2244(d)(2) until the mandate is issued).  Eighty-seven days passed between March 14, 2000, when the one year began, and June 9, 2000, when the year was tolled.  Thus, Petitioner's habeas petition, filed 327 days after tolling ended, is untimely.

The Supreme Court in Day cautioned the lower courts not to dismiss a case based upon the statute of limitations on their own initiative without first giving the parties fair notice and an opportunity to present their positions.  Day, 126 S. Ct. at 1684. Accordingly, by Order dated August 16, 2006, the Court gave the parties until August 30, 2006, to address the statute of limitations issue.  The Court noted that the statute of limitations may be equitably tolled if a petitioner establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGugliemo, 544 U.S. 408, 418 (2005).  Neither party has responded to the Order.

Based upon the above analysis of the statute of limitations in this case, the Court concludes that the present action should be dismissed as untimely under 28 U.S.C.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

§ 2244(d)(1).  Nevertheless, the Court will review the procedural and substantive issues raised by the parties.

**Procedural Default**

Respondent argues that this Court is procedurally barred from considering the merits of Petitioner's claims that trial counsel was ineffective for failing to call Johnson as a witness and for failing to object to statements made by the prosecutor during closing argument.  The Court agrees.  Under the doctrine of procedural default, a federal habeas court will not review a claim that a habeas petitioner did not properly present to the state courts, meeting the state's procedural requirements for doing so.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Coleman v. Thompson, 501 U.S. 722, 732 (1991)).

Here, as Respondent argues, Petitioner did not present the claims in question to the Missouri Court of Appeals.  These claims were thus defaulted in state court.  See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (a Missouri inmate procedurally defaults claims which should have been but were not raised on appeal from the denial of post-conviction motion); Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996) (same).

A habeas petitioner can overcome a procedural default if he demonstrates both cause for the default and actual prejudice therefrom, or that the failure to review the federal claim "will result in a fundamental miscarriage of justice."  Edwards, 529 U.S. at 451.  The miscarriage-of-justice exception permits review of a defaulted claim "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray v. Carrier, 477 U.S. 478, 496 (1986).  Here, however, Petitioner

- 11 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

offers no reason, nor does the Court discern any reason, why the procedural fault should be excused. The Court will thus turn to consider the merits of Petitioner's properly preserved claims.

**Merits - Standard of Review**

Under the AEDPA, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. Price v. Vincent, 538 U.S. 643, 640 (2003) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924 (8th Cir. 2003).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A case cannot be overturned merely because the federal habeas court concludes in its independent judgment that the relevant state-court decision incorrectly applied federal law; the application of federal law must also be "unreasonable."  Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (under the AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").  The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review."  Id.  Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence."  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); § 2254(e)(1).

**Identification of Petitioner**

Due process challenges to convictions based on in-court identifications which followed a suggestive out-of-court confrontation are reviewed under a two-step test:  The first step is to determine whether the challenged confrontation between the witness and the suspect was "impermissibly suggestive"; if so, the second inquiry is whether, under the totality of the circumstances, the suggestive confrontation created "a very substantial likelihood of irreparable misidentification."  Manson v. Brathwaite, 432 U.S. 98, 116 (1977).  Those identifications which are reliable  -- where the witness's perception of the suspect unaided by the suggestive confrontation provided a sufficient foundation for the identification -- are admissible.  Reliability is determined by examining (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

degree of attention at the time of the crime, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, (5) and the time between the crime and the confrontation. Manson, 432 U.S. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). Against these factors is to be weighed the corrupting effect of the suggestive identification itself. Id.

Here, Respondent seems to concede, and the Court agrees that, contrary to the state appellate court's conclusion, the showup identification procedure was improperly suggestive. See Clark v. Caspari, 274 F.3d 507, 511 (8th Cir. 2001) (showups are the most suggestive, and therefore the most objectionable method of pre-trial identification); Graham v. Solem, 728 F.2d 1533, 1542 (8th Cir. 1984) (same). Nevertheless, the Court cannot say that the state court's ultimate adjudication of this matter was unreasonable because the Court's review of the record satisfies the Court that Kevin Hoang's out-of-court and in-court identifications of Petitioner were sufficiently reliable to be admissible.

Kevin Hoang testified that he got a good look at the perpetrator in question during the incident. From the facts it is clear that he had a good opportunity to view his assailant, as they faced one another and were actually touching and struggling during a portion of the encounter. Although the record is silent as to the degree of attention with which Kevin Hoang viewed his assailant, he was certainly not a casual bystander, and it is fair to assume that he looked at the perpetrator with a high degree of attention. See, e.g., McFowler v. Jaimet, 349 F.3d 436, 449 (7th Cir. 2003) (noting that it is fair to assume that the victim of a crime observed the perpetrator with high degree of attention); Gregory-Bey

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

v. Hanks, 332 F.3d 1036, 1050 (7th Cir. 2003) (noting that witness identifications are more reliable when the witnesses are not casual observers, but are instead victims of the crime).

The third factor -- the accuracy of Kevin Hoang's pre-showup description of the criminal -- both supports and detracts from the reliability of his identifications of Petitioner. Kevin Haong did not tell the police that Petitioner had a goatee, but the record suggests that he accurately described Petitioner's height, weight, and short hair.[3] The Eighth Circuit has explained that the "lack of a 'graphic description' or even the failure to describe the assailant is not decisive since most persons immediately after or a short time after viewing a person, particularly under circumstances that occasion an interest in his appearance, are able mentally to photographically recognize that person." Graham v. Solem, 728 F.2d at 1545 (citations omitted).

Although Kevin Hoang's level of certainty was not 100 percent, he did rate his certainly as an eight out of ten, and the identification in question occurred very shortly after the crimes -- within approximately one-half hour -- increasing its reliability. The Court agrees with the state appellate court that the police asking Kevin Hoang to rate the level of certainty of his identification did not constitute encouragement or prompting on

_____

[3] The only evidence that Kevin Hoang included this information in his description of his assailant is the trial testimony by one of the police officers who received the dispatch about the crimes and then searched for and apprehended the orange car. Resp. Ex. A at 325. As there was evidence that the other victim could not describe the assailant with the screwdriver, it is reasonable to assume that this piece of information must have come from Kevin Hoang.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the part of the police.  In sum, the Court concludes that Kevin Hoang's ability to make a reliable identification was not outweighed by the corrupting effect of the showup, and that the admission of his out-of-court and in-court identifications did not violate his due process rights.

**Sufficiency of the Evidence**

Petitioner asserts that his due process rights were violated because there was insufficient evidence from which the jury could have found that he used a dangerous instrument, an element under Missouri law of both first-degree robbery and armed criminal action.  The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  In the § 2254 setting, the federal court  must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004).

Under Missouri law, a person commits the crime of robbery in the first degree "when he forcibly steals property and in the course thereof he, or another participant in the crime, . . . [u]ses or threatens the immediate use of a dangerous instrument against any person . . . ."  Mo. Rev. Stat. § 569.020.1(3).  A "person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."  Id.

- 16 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

§ 571.015. "Dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Id. § 556.061(9).

"Unlike a dangerous weapon, a dangerous instrument is not designed for use as a weapon and may have a normal function under ordinary circumstances." State v. Williams, 126 S.W.3d 377, 384 (Mo. 2004) (en banc). Several types of utilitarian instruments have been found to be "dangerous instruments" under Missouri law, including a beer bottle, State v. Terrell, 751 S.W.2d 394, 395 (Mo. Ct. App. l988), and specifically, a screwdriver pointed to the victim's neck, State v. Boyd, 844 S.W.2d 524, 526 (Mo. Ct. App. 1992). As explained in Williams, for an instrument to be considered a "dangerous instrument," there is no requirement of showing that the defendant had the subjective intent to use the object to cause death or serious physical injury, but "only a determination that the defendant knowingly used the instrument under circumstances capable of causing death or serious physical injury." Williams, 126 S.W.3d at 384-85.

In the present case, the evidence at trial established that Petitioner jabbed Kevin Hoang in the stomach several times with a screwdriver. Upon review of the record, this Court does not believe that the decision of the Missouri Court of Appeals, i.e., that a jury could find that the screwdriver was a dangerous instrument as used here, involved an unreasonable application of federal law or an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**Counsel's Failure to Call Officer Kahmke as a Witness**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 689. Under the AEDPA, this Court must give substantial deference to the state court's analysis of the evidence in considering an ineffective assistance of counsel claim. <u>Hoon v. Iowa</u>, 313 F.3d 1058, 1062 (8th Cir. 2002).

Here, as there was no evidentiary hearing on Petitioner's claim that counsel was ineffective in failing to call Officer Kahmke as a witness, any decision that the failure of defense counsel to call Officer Kahmke was trial strategy would be overreaching. And indeed, although the state appellate court referred to the proposition that trial strategy is virtually unchallengeable on collateral review, that court did not base its decision on this proposition. Rather the court relied, at least in part, upon the fact that during the cross examination of Kevin Hoang, it was brought out that he did not give a detailed description of Petitioner before the showup. Upon review of the record, this Court cannot say that the conclusion by the state courts that Petitioner did not suffer prejudice from the failure of counsel to call Officer Kahmke as a witness was based upon an unreasonable reading of the evidence presented at trial or upon an unreasonable application of <u>Strickland</u>. Lastly, the Court notes that the failure of the state courts to address Petitioner's pro se claim that

- 18 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

direct appeal counsel was ineffective is of no significance. As Petitioner had been appointed counsel, his pro se filing was not valid. Furthermore, the claim itself is without merit, in light of this Court's conclusion that Kevin Hoang's identifications of Petitioner were reliable.

## CONCLUSION

The Court concludes that this action was filed untimely. In addition, the Court finds that Petitioner is not entitled to federal habeas relief on the merits. The Court further does not believe that this is a case in which "reasonable jurists" might find the Court's assessment of Petitioner's claims "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(1)(A). See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (standard for denying certificate of appealability).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Matthew Turner for habeas corpus relief is **DENIED.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

PDF created with FinePrint pdfFactory trial version www.pdffactory.com